FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 NOV 14 AM 10: 53

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 2:18 cr 241 |
| v. | : | Judge Watson |
| | : | |
| HANJIN TRANSPORTATION CO., LTD., | : | (Sherman Act Conspiracy, 15 U.S.C. § 1) |
| | : | |
| Defendant. | : | |
| | : | |

## INFORMATION

(15 U.S.C. § 1)

The United States of America, acting through its attorneys, charges that during the period covered by this Information:

### DEFENDANT AND CO-CONSPIRATORS

1. Hanjin Transportation Co. Ltd. ("defendant") was a logistics company organized and existing under the laws of Korea, with its principal place of business in Seoul, Korea.

2. Beginning at least as early as December 2008, the defendant supplied essential heating and other fuels to United States Army, Navy, Marine, and Air Force installations in South Korea (collectively "United States Forces Korea" or "USFK"), pursuant to competitively bid Posts, Camps and Stations ("PC&S") contracts awarded by the Defense Logistics Agency ("DLA"), an agency of the United States Department of Defense.

3. DLA, formerly known as the Defense Energy Support Center, was an agency within the United States Department of Defense headquartered in Fort Belvoir, Virginia. One of its missions was to ensure that U.S. military installations around the world had their daily

necessities. To achieve this mission, DLA contracted with various contractors and subcontractors to supply those necessities, including fuel, food, and other goods.

4. The Army and Air Force Exchange Service ("AAFES") was an agency within the United States Department of Defense headquartered in Dallas, Texas. It sought to improve the lives of soldiers and airmen by providing quality goods and services to soldiers and airmen at military and air bases throughout the world, including by providing reasonably priced gasoline at on-base service stations. One hundred percent of AAFES' earnings supported the military community, including by funding Army Child Development Centers, Youth Services and fitness centers, delivery of Warfighters' uniforms, and affordable school lunches for service members' children overseas.

5. The Defense Finance and Accounting Service ("DFAS") was the financial and accounting organization for the United States Department of Defense located in Columbus, Ohio. One service DFAS provided was making payment to contractors on certain Department of Defense contracts, including payments made from Columbus, Ohio, to South Korea, via Electronic Funds Transfer, for contracts issued by DLA and AAFES.

6. DLA awarded PC&S fuel supply contracts in Korea via a full and open competitive procurement process. Generally, a single PC&S solicitation would list numerous USFK installations and their estimated supply needs for gasoline, diesel, and kerosene. Each installation was then assigned a separate line item number. DLA made awards for each line item based on the lowest bid price and the contractors' past performance. AAFES administered a similar procurement process and solicited competitive bids for contracts to supply fuel to on-base service stations in Korea. Upon shipment or delivery of fuel under the PC&S contracts, the contractor would submit an invoice which represented to the United States Department of

Defense that the fuel met the requirements of the contract. Upon receipt of the invoice, DFAS would wire payment to the contractor from its location in Columbus, Ohio, via Electronic Funds Transfer.

7. Whenever this Information refers to any act, deed or transaction of any company, it means that the company engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business affairs.

8. Other corporations and individuals not made defendants in this Information participated as co-conspirators in the offenses charged herein and performed acts and made statements in furtherance of the conspiracy.

## DESCRIPTION OF THE OFFENSE

9. Beginning at least in or around March 2005, and continuing until at least approximately October 2016, in the Southern District of Ohio and elsewhere, the defendant's co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition for certain USFK fuel supply contracts, including certain PC&S contracts. The defendant joined this ongoing conspiracy in or around November or December 2008. The combination and conspiracy engaged in by the defendant and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

10. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and its co-conspirators, the substantial terms of which were to suppress and eliminate competition by agreeing to allocate the supply volume of, fix prices of, and submit artificially determined, non-competitive, inflated bids and to

3

refrain from bidding for certain USFK fuel supply contracts, including certain PC&S contracts. The objective of the conspiracy was to be awarded certain USFK fuel supply contracts and receive payments from agencies of the United States Department of Defense at non-competitive, inflated prices for the duration of the contracts.

## MEANS AND METHODS OF THE CONSPIRACY

11. For purposes of forming and carrying out the charged combination and conspiracy, the defendant and/or its co-conspirators did those things which they combined and conspired to do, in the United States and elsewhere, including, among other things:

   a. discussing, agreeing, and designating which co-conspirator would be the winning bidder for certain line items in PC&S Solicitations SP0600-05-R-0063, SP0600-05-R-0063-0001, SP0600-08-R-0233, and SP0600-12-R-0232 in advance of the submission of bids to DLA in the United States;

   b. discussing, exchanging, and agreeing on the price or price levels that co-conspirators would bid for certain line items in PC&S Solicitations SP0600-05-R-0063, SP0600-05-R-0063-0001, SP0600-08-R-0233, and SP0600-12-R-0232 in advance of the submission of bids to DLA in the United States;

   c. submitting, or causing to be submitted to DLA in the United States "bogus," intentionally losing bids for certain PC&S line items, or refraining to bid on certain line items, with the understanding that they would be allocated other business;

   d. submitting invoices to agencies of the United States Department of Defense in the United States for fuel supply services provided to the U.S. military at artificially determined, non-competitive, inflated prices;

4

e. receiving payments from agencies of the United States Department of Defense in the United States for fuel supply services provided to the U.S. military at artificially determined, non-competitive, inflated prices;

f. discussing, agreeing, and designating which co-conspirator would be the winning bidder for certain AAFES contracts; and

g. causing agencies of the United States Department of Defense located in the United States to pay artificially determined, non-competitive, inflated rates to the defendant and its co-conspirators for the duration of the fuel contracts, thereby increasing the profitability of those contracts for the winning co-conspirator.

## TRADE AND COMMERCE

12. During the time period covered by this Information, the defendant and its co-conspirators sold to DLA in the United States fuel and fuel supply services for use at U.S. military bases. The charged combination and conspiracy involved U.S. import trade or commerce in fuel and fuel supply services. Pursuant to PC&S contracts, the defendant delivered fuel to USFK installations. The charged combination and conspiracy had a direct, substantial, and reasonably foreseeable effect on U.S. interstate and import trade and commerce in fuel and fuel supply services and on U.S. interstate commerce and that effect, in part, gives rise to this charge.

13. During the time period covered by this Information, the charged combination and conspiracy had a substantial and intended effect in the United States. For example, the charged combination and conspiracy caused a United States Department of Defense agency located within the Southern District of Ohio to transfer U.S. dollars to the Korean bank account of defendant. The charged combination and conspiracy also caused United States Department of

Defense agencies to pay non-competitive prices for fuel and fuel supply services for use at U.S. military bases.

14. During the time period covered by this Information, the business activities of the defendant and its co-conspirators in connection with USFK fuel supply contracts were within the flow of, and substantially affected, commerce among the states and with foreign nations.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated: November 14, 2018

_____
MAKAN DELRAHIM
Assistant Attorney General

_____
ANDREW C. FINCH
Principal Deputy Assistant Attorney General

_____
RICHARD A. POWERS
Deputy Assistant Attorney General

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

Antitrust Division
United States Department of Justice

_____
RYAN DANKS
Acting Chief, Washington Criminal I

_____
KEVIN B. HART
Assistant Chief, Washington Criminal I

_____
RYAN D. TANSEY
KATHERINE H. STELLA
CAROLYN SWEENEY
KEN SAKURABAYASHI
Trial Attorneys, Antitrust Division
U.S. Department of Justice

450 5th Street, NW
Washington, DC 20350
(202) 532-4156
ryan.tansey@usdoj.gov

7

Dated: 11/13/18, 2018

*(signature)*
BENJAMIN C. GLASSMAN
United States Attorney
Southern District of Ohio

*(signature)*
BRENDA SHOEMAKER
Deputy Criminal Chief
United States Attorney's Office
Southern District of Ohio